IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    Washington Field Office<br>    131 M Street, N.E., Suite 4NW02F<br>    Washington, D.C. 20507<br><br>        Plaintiff,<br><br>    v.<br><br>TRIPLE CANOPY, INC.<br>    12018 Sunrise Valley Dr., Ste. 140<br>    Reston, VA 20191<br><br>        Defendant. | Civil Action No. 1:23-cv-1500<br><br>COMPLAINT AND<br>JURY TRIAL DEMAND |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on religion and to provide appropriate relief to Charging Party Marcus Williams ("Williams"). The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Triple Canopy, Inc. ("Triple Canopy" or "Defendant"), violated Title VII by discriminating against Williams by refusing to accommodate his sincerely-held religious beliefs, retaliating against him for engaging in protected activity, and subjecting him to intolerable work conditions that resulted in his constructive discharge.

**JURISDICTION AND VENUE**

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

## PARTIES

3. The EEOC is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. Triple Canopy, Inc., is a Virginia corporation headquartered in Reston, Virginia, that has continuously had at least 15 employees.

5. In each calendar year 2019 through the present, Defendant continuously employed more than 500 employees.

6. At all relevant times, Triple Canopy has continuously been doing business in the District of Columbia, where the unlawful employment practices that are at issue in this lawsuit took place.

7. At all relevant times, Triple Canopy has continuously been an employer engaged in an industry affecting commerce under Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Williams filed a Charge of Discrimination with the Commission alleging that Defendant had discriminated against him on the basis of his religion by refusing to accommodate his sincerely-held religious beliefs in violation of Title VII.

9. Triple Canopy responded to Williams' Charge of Discrimination and participated in all aspects of the administrative investigation.

10. On January 13, 2023, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated Title VII by discriminating against Williams on the basis of his religion, by retaliating against him because he had engaged in protected activity, and by constructively discharging him. The EEOC invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. After issuing the Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

12. On February 10, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Williams is a Nondenominational or Pantheist Christian.

15. Williams holds the sincerely-held religious belief that a man should not shave his beard except for medical reasons or when in mourning.

16. Williams was continuously employed by Defendant from July 18, 2019, until August 17, 2021.

17. At all relevant times, Williams was a Protective Security Officer ("PSO").

18. At all relevant times, Williams worked as a PSO on Defendant's contract with the Department of Homeland Security ("DHS") to provide security for its Federal Triangle complex located in Washington, D.C.

19. As part of its contract with DHS, Defendant maintained a grooming standard requiring that "[f]aces must be clean-shaven, except for mustaches and sideburns" (hereinafter "the grooming standard").

20. Defendant may seek a contract waiver from DHS when an employee seeks a medical or religious exemption to the grooming standard.

21. Defendant has requested and received medical and religious waivers from its contract with DHS that allowed employees to have beards.

22. At the time of his hiring, Williams applied for a medical exemption from the grooming standard based on his diagnosis of pseudofolliculitis barbae. Defendant granted Williams' medical exemption, which allowed him to grow his facial hair out to a quarter of an inch.

23. On November 21, 2020, Williams sought a religious exemption from Defendant's grooming standard requesting that he be permitted to have a full beard below the sides of his mouth, fully covering his chin, the part of his face not affected by his pseudofolliculitis barbae.

24. On November 25, 2020, Defendant requested that Williams provide "a written substantiation of the need for a beard, as part of the observance of your faith, by a religious authority or leader of your religious body."

25. On November 30, 2020, Williams informed Defendant that he was a "non denominational Christian" and not a member of a formal church and could not therefore provide

a statement from a religious leader. Williams offered to send a written description of his beliefs and a third-party witness statement to confirm his beliefs.

26. On December 1, 2020, Williams emailed Defendant a written description of his beliefs, stating that a man's facial hair is "a crown" and a "sign of wisdom," and that "[i]n all the biblical texts I've read, the importance of a mans [sic] beard is paramount."

27. On December 1, 2020, Williams had a third-party witness email Defendant to confirm Williams' religious practice.

28. Three months after Williams' request, on March 16, 2021, Defendant advised Williams that it could not grant his requested accommodation as it "exceeds similar medial [sic] and religious belief accommodation standards" and that he needed to provide "some doctrine or other substantiation" and if available a "supporting statement from a certified or document [sic] religious leader."

29. In response, Williams again explained that he was requesting to grow a beard on the parts of his face not affected by his medical condition, that he was not a member of a formal religious denomination, and that he was not sure what other information he could provide but would be happy to do so if Defendant had any more specific questions.

30. On June 1, 2021, Defendant denied Williams' request for an accommodation, stating, "[Y]ou have been unable to provide the additional requested substantiation of your beliefs or supporting statement from a certified or documented religious leader."

31. On June 2, 2021, Williams emailed Defendant to ask what other information he could provide as he was not a member of a formal religious denomination. Defendant did not reply to this email.

32. Also on June 2, 2021, Williams shared with both his supervisor, Major Gerald Rouse ("Rouse") and his project manager, Nkrumah Williams, that he would continue to seek this reasonable accommodation. Rouse and Nkrumah Williams advised Williams that they would not require him to shave while he continued to pursue his accommodation request.

33. On June 21, 2021, Defendant was notified that Williams had filed a Charge of Discrimination with the EEOC.

34. Three days after Defendant learned of Williams' charge, his supervisor Rouse advised Williams that he would be disciplined if he arrived at work in violation of the grooming standard. Williams stated he was unwilling to shave his beard.

35. Because of this threat of discipline, Williams did not report for his next shift. Defendant then removed Williams from the schedule.

36. On July 14, 2021, Defendant notified Williams that he was in a "leave of absence status," and, while he was not guaranteed reemployment, he needed to confirm his intent to continue working.

37. That same day, Williams confirmed to Defendant his continued pursuit of a religious accommodation:

> I am currently trying to find a[n] appropriate way to handle the current issue with my religious request, as you may know . . . my religious standing as you can imagine is extremely important to me, and not a matter I take lightly. I responded to the email sent on June 2nd and received no response. I was never given clarity on what the company expects me to produce as way of proof of my religious obligations outside of what I have provided. So if you could expound on the subject it would be greatly appreciated. And maybe allow us to find a way to bring this situation to a close.

38. Williams followed up with Defendant two days later and did not receive a response. When he did not hear from Defendant, he began looking for other jobs.

39. On August 4, 2021, Defendant's human resources office finally contacted Williams. During that call, Williams explained again his religious beliefs and how his medical condition prevented him from having a beard anywhere other than his chin. Defendant nonetheless again demanded that Williams shave in order to return to work. Williams stated that he would not shave but that he would return to work if his religious accommodation request was granted and he was exempted from the grooming standard.

40. After Williams did not hear from Defendant for another two weeks, he was constructively discharged.

41. Williams' last day of employment with Defendant was August 17, 2021.

42. At no point did Defendant submit a religious accommodation request on behalf of Williams to its client, DHS.

## STATEMENT OF CLAIMS

43. From November 1, 2020, until August 17, 2021, Defendant engaged in unlawful employment practices in violation of Sections 701(j), 703(a), and 704(a), 42 U.S.C. §2000e(j), §2000e-2(a)(1), and §2000e-3(a), by failing to grant Williams a religious accommodation, by retaliating against him for filing a Charge of Discrimination with the EEOC and engaging in other protected activities, and by constructively discharging Williams by creating working conditions that were sufficiently adverse that a reasonable person in his position would have felt compelled to resign.

44. The effect of the practices complained of above has been to deprive Williams of equal employment opportunities and otherwise adversely affect his status as an employee because of his religion and because he engaged in protected activities under Title VII.

45. The effect of the practices complained of above has been to deprive Williams of equal employment opportunities and otherwise adversely affect his rights under Title VII resulting in lost wages, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, because of his religion.

46. The unlawful employment practices complained of above were intentional.

47. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Williams.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against its employees on the basis of their religion and from retaliating against employees who engage in protected activities under Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals who need accommodations for their sincerely-held religious beliefs and practices, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to implement non-discriminatory objectives, written policies, and practices that provide equal employment opportunities for employees of all religions, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not discriminate against any employee because of their religion.

E.   Order Defendant to make Williams whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay and reinstatement.

F.   Order Defendant to make Williams whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to any job search expenses and other pecuniary losses, in amounts to be determined at trial.

G.   Order Defendant to make Williams whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of herein, including emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

H.   Order Defendant to pay Williams punitive damages for its malicious and reckless conduct described herein, in amounts to be determined at trial.

I.   Grant such further relief as the Court deems necessary and proper.

J.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
General Counsel

DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney

/s/ R. Sam Wallace
R. SAM WALLACE
Trial Attorney
U.S. Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
Phone: (267) 589-9762
Fax:    (215) 440-2848
sam.wallace@eeoc.gov


ATTORNEYS FOR PLAINTIFF

Dated:        May 25, 2023